## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **YAUHENI DZEHTISAROU,** | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO. 26-5060** |
| **MARKWAYNE MULLIN,** *et al.*, | |
| **Respondents.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                             **July 31, 2026**

Petitioner Yauheni Dzehtisarou lawfully entered the United States as a non-citizen. After his arrival in the United States, Petitioner affirmatively applied for asylum, and his application remains pending. Seven years later, Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner.

Now before the Court is Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his detention as unlawful. Petitioner argues that his detention violates the Fourth Amendment and procedural due process provision of the Fifth Amendment. The government opposes the Petition and argues that this Court lacks jurisdiction, that Petitioner failed to exhaust administrative remedies, and that Petitioner received due process. For the reasons stated below, the Court will grant the Petition and order Petitioner's immediate release.

## I.    BACKGROUND

Petitioner is a national and citizen of Belarus who lawfully entered the United States on or about June 17, 2019, on a J-1 nonimmigrant exchange visa.[1] The period of authorized

---

[1] Pet. ¶ 3 [Doc. No. 1]; Opp'n at 4 [Doc. No. 7].

admission under the visa extended until October 1, 2019.[2] Shortly after entering the country, Petitioner filed an affirmative application for asylum based on a fear of persecution in Belarus.[3] He has remained continuously in the United States since 2019.

Petitioner has continued to pursue asylum in accordance with the requirements of the Immigration and Nationality Act ("INA").[4] Petitioner remained in contact and engaged with immigration officials while awaiting adjudication of his asylum application.[5] Petitioner is married to a lawful permanent resident of the United States who he expects to become eligible for naturalization soon.[6]

On July 18, 2026, Petitioner was arrested by immigration officials while traveling domestically in the United States.[7] Petitioner is currently detained at the Federal Detention Center in Philadelphia, Pennsylvania.[8] Petitioner has no criminal record or outstanding warrants.[9]

On July 20, 2026, Petitioner filed the instant Petition for a Writ of Habeas Corpus.[10] This Court entered an order prohibiting Petitioner's transfer, directing the government to file a response by July 24, 2026, and setting a hearing for July 28, 2026.[11] The government failed to file a response to the Petition or enter an appearance by July 24. On July 27, 2026, the parties

---

[2] Opp'n at 4 [Doc. No. 7].

[3] Pet. ¶ 3 [Doc. No. 1].

[4] *Id.* ¶ 54.

[5] *Id.*

[6] *Id.* ¶ 55.

[7] *Id.* ¶ 7.

[8] *Id.* ¶ 13.

[9] *See* Opp'n at 8-9 [Doc. No. 7].

[10] Pet. [Doc. No. 1].

[11] 7/21/26 Order [Doc. No. 3].

entered a stipulation, which this Court approved, permitting the government to file a response on or before July 28, 2026 at 12:00 p.m. and resolving to decide the Petition on the papers.[12] Having received the government's response,[13] the Court now evaluates the Petition.

## II.    LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where Petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[14] The petitioner has the burden of showing that the detention violates the Constitution of the United States or federal law.

## III.    DISCUSSION

Petitioner argues that his detention violates the Due Process Clause because ICE did not make an individualized custody determination before detaining him under § 1226(a). The government contends that ICE did make an individualized determination and that Petitioner must exhaust administrative remedies by pursuing a bond hearing before an immigration judge and, if necessary, an appeal to the Board of Immigration Appeals. It also asserts that Petitioner is lawfully detained under § 1226(a).

As a preliminary matter, this Court finds that it has jurisdiction to review Petitioner's claims. While the government challenges this Court's jurisdiction over Petitioner's due process claims based on a failure to exhaust, exhaustion is not a jurisdictional matter.[15] The government challenges this Court's jurisdiction over Petitioner's INA claim based on 8 U.S.C. § 1252(g). Section 1252(g) bars review of "any cause of claim . . . arising from the decision or action by the

---

[12] 7/27/26 Stipulation & Order [Doc. No. 6].

[13] Opp'n [Doc. No. 7].

[14] 28 U.S.C. § 2241(c)(3); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

[15] *Devine v. St. Luke's Hosp.*, 406 F. App'x 654, 656 (3d Cir. 2011).

Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter."[16] Section 1252(g) does not reach Petitioner's petition, which challenges only his detention without an individualized custody determination, not the commencement of removal proceedings. This Court finds that any other jurisdiction-stripping provisions of the INA do not apply.[17]

### A.      Exhaustion

Exhaustion "is a matter of sound judicial discretion" when not required by statute.[18] Petitioners seeking habeas relief under § 2241 are generally required to exhaust their claims through administrative procedures.[19] However, a § 2241 habeas petitioner need not exhaust administrative remedies if exhaustion would be futile or if the issue presented involves only statutory construction.[20]

To the extent that Petitioner challenges his initial custody determination, he is not required to exhaust administrative remedies. "A later bond hearing does not necessarily cure the alleged constitutional deprivation that preceded it."[21]

---

[16] 8 U.S.C. § 1252(g).

[17] 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1252(b)(9) do not apply to this case. The limit on federal review in § 1252(a)(2)(B)(ii) concerns only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those official's discretion. Authority under the detention statute is not a matter of discretion, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), so § 1252(a)(2)(B)(ii) does not preclude this Court's consideration of Petitioner's petition.

Finally, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Sec'y of U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020). Petitioner's argument that he is unlawfully detained does not challenge his removal. Section 1252(b)(9) does not apply.

[18] *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980).  s

[19] *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

[20] *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists."); *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (A petitioner does "need not exhaust administrative remedies where the issue presented involves only statutory construction . . . .").

[21] *Dos Reis v. McShane*, Civil Action No. 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("explaining that 'any post-deprivation review by an immigration judge' is inadequate where ICE failed to conduct an individualized assessment before detention.")); *see*

Secondarily, exhaustion of administrative review is currently unavailable to the Petitioner. As the government represents, Petitioner is detained pursuant to 8 U.S.C. § 1226(a), which provides for an administrative review of his detention.[22] Under § 1226(a), "the Attorney General . . . may continue to detain" a noncitizen or "may release" the noncitizen on bond or conditional parole, which establishes a discretionary detention framework.[23] Petitioner has requested such a bond hearing,[24] and Respondents represent that "ICE facilitated the process of requesting a bond hearing on Petitioner's behalf by filing the Form I-286 with the immigration Court on July 21, 2026."[25] However, Respondents are not facilitating remote hearings for such detainees at the Federal Detention Center in Philadelphia.[26] They claim that Petitioner cannot receive his requested bond hearing without transfer to another facility.[27] ICE does not provide an explanation why they are unable to bring Petitioner to an in-person bond hearing. Based on the explanations provided to the Court, the government has created detention arrangements that inhibit Petitioner's access to a bond hearing. "A remedy that exists only if ICE elects to make it accessible is not an available remedy Petitioner must exhaust."[28] Accordingly, the Court finds that Petitioner is not required to exhaust administrative remedies.

---

*also Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("[A] bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance.").

[22] Opp'n at 7-9 [Doc. No. 7]; 8 U.S.C. § 1226(a).

[23] 8 U.S.C. § 1226(a).

[24] Opp'n, Ex. C, Notice of Custody Determination [Doc. No. 7-3].

[25] Opp'n at 4-5 [Doc. No. 7].

[26] Opp'n at 5 [Doc. No. 7].

[27] *Id.*

[28] *Dos Reis*, 2026 WL 1746649, at *3. *Cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) (finding that, in the context of the PLRA, a prisoner "need not exhaust unavailable" remedies); *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (concluding that, in the context of the PLRA, an "administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'") (quoting *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

**B.    Procedural Due Process Claim**

Petitioner specifically challenges his detention under the Due Process Clause of the Fifth Amendment.[29] Because it is uncontested that Petitioner is detained pursuant to § 1226(a), the Court must next "determine whether the detention violates due process."[30]

Under the Fifth Amendment, noncitizens are entitled to due process of law during removal proceedings.[31] Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of government restraint—lies at the heart of the liberty that [the Due Process] Clause protects."[32] When it is clear that due process applies, "the question remains what process is due."[33] The requirements and procedural protections of due process depend on the particular situation at issue.[34] The flexibility of due process "is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."[35] "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances."[36] Determining whether process is constitutionally sufficient requires analysis of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the

---

[29] While this Court has previously ruled in a similar action on the basis of violations of the INA, here Petitioner does not base his Petition on violations of the INA's statutory scheme. *See Doe v. Jamison*, Civil Action No. 26-1906, 2026 WL 916568, at *5-7 (E.D. Pa. Mar. 31, 2026). Accordingly, the Court proceeds only on Petitioner's due process and Fourth Amendment claims.

[30] *Singh v. Bondi*, 5:26-CV-0125-JKP, 2026 WL 690013, at *4 (W.D. Tex. Mar. 6, 2026) (quoting *Lopez Benitez*, 795 F. Supp. 3d at 491-96 (S.D.N.Y. 2025)) (internal quotation marks omitted).

[31] *Reno v. Flores*, 507 U.S. 292, 306 (1993).

[32] *Zadvydas*, 533 U.S. at 690 (2011).

[33] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

[34] *Id.*

[35] *Id.*

[36] *Mathews v. Eldrige*, 424 U.S. 319, 334 (1976) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).

probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[37]

These factors apply "when determining the adequacy of process in the context of civil immigration confinement."[38] Accordingly, the Court conducts an individualized assessment by balancing these factors to determine whether Petitioner has received procedural due process.

        1.        Private Interest

Petitioner's "interest in being free from physical detention" is "the most elemental of liberty interests."[39] The Supreme Court has recognized that conditional release, as of a parolee, while not unrestricted liberty, "is valuable and must be seen as within the protection of the" Due Process Clause.[40] "[T]he liberty of a parolee [or person on conditional release], although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."[41] Further, Petitioner has a substantial liberty interest in his release as he entered the United States on a valid nonimmigrant visa, has a pending affirmative asylum application, and has significant family ties here."[42]

The government made the affirmative decision not to detain Petitioner in 2019 when he timely filed his application for asylum before his visa expired. Indeed, the government has

---

[37] *Id.* at 334-35.

[38] *Lopez Benitez*, 795 F. Supp. 3d at 492 (quoting *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931 at *2 (S.D.N.Y. July 13, 2025)).

[39] *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

[40] *Morrissey*, 408 U.S. at 482.

[41] *Id.*

[42] *See Grigoryan v. Lyons*, 5:26-CV-02024-DMK, 2026 WL 2032230, at * (C.D. Cal. June 16, 2026) (citing *Xianming H. v. Warden*, 2026 WL 1283415, at *3 (E.D. Cal. May 11, 2026) (petitioner, who overstayed a tourist visa and has a pending asylum application, "has a clear liberty interest" that is protected by due process); *Saadi v. LaRose*, 2026 WL 892831, at *4 (S.D. Cal. Mar. 30, 2026) (noncitizen who entered on a tourist visa and has a pending asylum application "has developed an interest in remaining during his time here")).

regularly had contact with Petitioner and knowledge of his status, and it has repeatedly elected not to detain him. Petitioner has a substantial liberty interest in this continued freedom from detention.

Due to his detention under § 1226(a), Petitioner is owed the process due under that statute. While detention under § 1226(a) is a discretionary matter for ICE, a noncitizen detained pursuant to the statute is entitled to a bond hearing before an immigration judge. This requirement, as noted by the Western District of Texas and the Southern District of New York, "has two components—one that applies pre-detention and one that applies as a noncitizen continues to be detained."[43]

Before the government can exercise its discretion to detain a noncitizen under § 1226, ICE must make an individualized custody determination.[44] A logical reading of § 1226 and its implementing regulations require this individualized determination in an initial custody determination and subsequent review by an immigration judge and the BIA.[45] "The initial custody determination requires an individualized determination as to whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding."[46]

The record does not reflect an individualized assessment prior to Petitioner's detention. The government claims that, in making Petitioner's custody determination, "ICE considered various negative factors, including Petitioner having violated the terms of his nonimmigrant

---

[43] *Singh*, 2026 WL 690013, at *5 (citing *Lopez Benitez*, 795 F. Supp. 3d at 491-96).

[44] *Dos Reis*, 2026 WL 1746649, at *4; *see also Singh*, 2026 WL 690013, at *6; *Lopez Benitez*, 795 F. Supp. 3d at 493.

[45] *See* 8 C.F.R. § 1236.1(c); 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director . . . the respondent may . . . request amelioration of the conditions" by application to an immigration judge); 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the [BIA]."); 8 C.F.R. § 1003.19(a) ("Custody and bond determinations made by the service ... may be reviewed by an Immigration Judge.").

[46] *Dos Reis*, 2026 WL 1746649, at *4 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 493 (quoting 8 C.F.R. § 1236.1(c)(8))) (internal quotation marks omitted).

8

status and lack of any lawful immigration status . . . ."[47] The government provides the Notice of Custody Determination Form provided to Petitioner, which simply reflects that the authorizing officer made a determination that he would be "Detained."[48] There is no reasoning or explanation to support this determination. The government also presents Petitioner's Record of Deportable/Inadmissible Alien, which notes that Petitioner has no criminal record, no outstanding wants or warrants, and no gang affiliation.[49]

The government's justification for Petitioner's detention wholly relies on claims that Petitioner "violated the terms of his nonimmigrant status" and lacked any legal status.[50] However, neither the government's answer nor the Record of Deportable/Inadmissible Alien consider, or even acknowledge, that Petitioner timely affirmatively applied for asylum during his lawful period of presence under his J-1 nonimmigrant visa.

This failure is damning to any argument that ICE conducted an individualized custody determination for Petitioner. Relying solely on Petitioner's immigration status amounts to "a per se determination" that "comports not with 1226(a), but with [the government's] desired policy of detention."[51] Detention pursuant not to a discretionary decision, but to a government policy, is not permitted by § 1226(a). Given the government's failure to provide reasoning based on an

---

[47] Opp'n at 8-9 [Doc. No 7].

[48] Opp'n, Ex. C, Notice of Custody Determination [Doc. No. 7-3].

[49] Opp'n, Ex. A, Record of Deportable/Inadmissible Alien [Doc. No. 7-1].

[50] Opp'n at 8-9 [Doc. No 7]; *see also* Opp'n, Ex. A, Record of Deportable/Inadmissible Alien [Doc. No. 7-1] (not noting asylum application in recounting immigration history and stating that Petitioner is removable because his visa authorization period ended on October 1, 2019).

[51] *Dos Reis*, 2026 WL 1746649, at *4 (citing *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026); *Cajamarca-Janza v. Soto*, No. 26-cv-3066, 2026 WL 1506777, at *4 (E.D.N.Y. May 29, 2026) (finding that the government's reliance on the legal status "effectively creates a no-win situation for noncitizens writ large" because "[n]ot only is this not sufficiently individualized for purposes of Section 1226(a), but if taken to its logical conclusion," it allows ICE to "grant itself license to ignore the facts that do not fit its desired outcome")).

9

individualized determination, "the facts clearly demonstrate that [Petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing regulations."[52]

### 2.    Risk of Erroneous Deprivation

Section 1226(a) requires an individualized custody determination prior to the detention of a noncitizen not subject to mandatory detention prevents an erroneous risk of deprivation.[53] As discussed, no such individualized determination occurred prior to Petitioner's detention, nor has any occurred at a bond hearing during his detention. Further, Petitioner has no criminal record, and he lawfully entered the United States on a J-1 visa and timely affirmatively applied for asylum. The record demonstrates that Petitioner has done everything right, and "[h]e appears to be a prime candidate for release on bond or conditional parole as permitted by § 1226(a)," so there is a high risk of erroneous deprivation.[54]

### 3.    Government's Interest

The government has an interest in immigration enforcement, and specifically in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community."[55] Accordingly, the government may validly detain a noncitizen under § 1226(a) when it advances these interests. However, as noted, the government has not identified evidence that Petitioner poses a flight risk or a risk to the community. Thus, the government has not shown a significant interest in Petitioner's detention.[56]

---

[52] *Lopez Benitez*, 795 F. Supp. 3d at 495 (citation and internal quotation marks omitted).

[53] *See id.* at 493; *Singh*, 2026 WL 690013, at *6.

[54] *Singh*, 2026 WL 690013, at *6.

[55] *Zadvydas*, 553 U.S. at 690.

[56] *See Singh*, 2026 WL 690013, at *7; *Lopez Benitez*, 795 F. Supp. 3d at 496.

4.      Balancing the Factors

Balancing the "significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in [Petitioner's] detention," the factors overwhelmingly weigh to finding a due process violation.[57] While the requirement of "pre-detention process in this case would present some administrative  burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient."[58] Further, any government interest in continuing to detain Petitioner without a bond hearing does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation. Accordingly, Petitioner's due process rights were violated by his detention without a pre-detention individualized custody assessment or post-detention bond hearing.

The government's countervailing interest in enforcing immigration laws is outweighed by the other factors in this case. Further, "the public also has an interest in the government following those laws . . . by providing bond when the law requires it."[59] The Court also notes that the arrest and detention of affirmative applicants for asylum, who are patiently waiting for years-long delays in asylum adjudications is an abrupt policy change. Several presidential administrations, including the first Trump administration, did not arrest and detain affirmative asylum applicants who applied with lawful status. This conduct ought to be considered.[60] This

---

[57] *Singh*, 2026 WL 690013, at *7 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 496).

[58] *C.W.M. v. Hermosillo*, No. 2:25-CV-02688-DGE, 2026 WL 183587, at *5 (W.D. Wash. Jan. 23, 2026).

[59] *Rojas Vargas v. Bondi*, 1:25-CV-01699-DAE, 2025 WL 3251728, at *4 (W.D. Tex. Nov. 5, 2025).

[60] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is.") (internal quotation marks omitted). *See also Avila v. Bondi*, 170 F.4th 1128, 1138-40 (8th Cir. 2026) (Erickson, J., dissenting) (interpreting IIRIRA in accordance with years of precedent from all three branches of government).

11

policy change, coupled with the failure to provide Petitioner due process to which he is entitled, strips § 1226 and the asylum provisions of the INA of their meaning.

Based on the Fifth Amendment due process violation, Petitioner's detention is unlawful and he is entitled to habeas relief.

5.      Remedy

Having found a constitutional violation, the Court must determine the appropriate remedy. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."[61] A post-detention bond hearing does not substitute the requirement for ICE to conduct a pre-detention individualized assessment necessary for the "initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause."[62] As nothing in the record has shown that Petitioner poses any danger to the community or flight risk, the Court will order his immediate release. Should the government seek to re-detain Petitioner, the Court will order he receives a bond hearing at which the government must demonstrate that Petitioner presents a flight risk or danger to the community prior to any renewed detention.

**C.      Fourth Amendment Claim**

Petitioner also challenges his detention under the Fourth Amendment. Because Petitioner is entitled to habeas relief based on violation of procedural due process, the Court does not reach the Fourth Amendment claim.

---

[61] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

[62] *Cruz-Reyes v. Bondi*, 818 F. Supp. 3d 875, 884 (S.D. Texas 2026) (quoting *Gonzalez v. Joyce*, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025)).

12

**IV.    CONCLUSION**

For the reasons stated herein, the Petition for a Writ of Habeas Corpus will be granted, and the Court will order Petitioner's immediate release. An order will be entered.